Good morning and may it please the Court. My name is Albert Sieber. I'm appearing on behalf of the petitioner-appellant Antonio McKibbins. I'd like to attempt to reserve two minutes for rebuttal. This case involves a series of lapses by court-appointed defense counsel that culminated in the unseemly spectacle of that counsel, Mr. Koka, voluntarily testifying against his own former client at the State's request regarding confidential information that he had obtained in the course of his representation of Mr. McKibbins. I thought it was bad information he didn't obtain. Well, it's a matter of certainly there was some sort of an interview being conducted between He said what was not told to him by the defendant's wife. I think the fact of not receiving information in this case is the equivalent of having received the information. What he got out of the communication and actually the content of those conversations between himself and the alibi witness, Mrs. McKibbins, is disputed on some level, because she, you know, she took the position that she was absolutely trying to communicate with him about this alibi witness. He denied that based on his recollection. But the bottom line, I think, is that what he got from these communications was the idea that she either didn't have an alibi to offer or had not offered it. I mean, I think that qualifies as confidential information. It was part of a discussion that occurred between a witness to determine. Why do you say it's confidential information? She was not married to Mr. McKibbin at that time. You're not claiming it was a marital communication, are you? No, we are not. Then why is it confidential? It's confidential in that it's part of the investigation of the alibi defense in this case. She was attempting to reach out to counsel, and counsel eventually did speak to her about the alibi that could be offered in this case. Wouldn't it be subject to prosecution discovery? I don't believe it would be, Your Honor. An alibi witness is not subject to prosecution discovery? Certainly, the alibi witness herself would be. But I don't think the – I think it would be a strange rule that any time an attorney reaches out to – It wasn't her attorney. It wasn't, but it was a witness for Mr. McKibbin's. An inconvenient witness. I don't believe so. She did testify at trial, and I – she did provide an alibi. You know, she accounted for Mr. McKibbin's whereabouts at the time of the robbery. She also provided testimony regarding why he would be present at the scene where he was arrested. So she did provide an alibi. Now, I think counsel had a – former counsel had a conversation here with her. This was part of the investigation of the case. And he apparently, based on these communications, disbelieved, I suppose, on his recollection. It's probable that the reason he spoke to the judge was that he said, I will not put on perjured testimony and I wish to be relieved. You know, I think – you know, I think it is fair to assume that the content of that confidential discussion was regarding the alibi defense. Of course. We don't have – you know, it's not in the record. You know, in terms of what may have been disclosed at that conversation, you know, the idea, you know, the model, the rules of professional responsibility 1.16 specifically would suggest counsel was not in a position to – he should have just simply stated that there was a conflict and left it at that, instead of going beyond and saying – How do you know what he told the judge? What's that? How do you know what he told the judge? Well, we don't know the judge. And I think that is a big – So how do you know he went beyond that? Well, because on the face of the record, the trial judge reveals that, you know, that confidential information was disclosed. It wasn't simply – What was the content of the confidential information disclosed? And could you give me a cite to the record? I'm sorry? Could you give me a cite to the record as to what confidential information was disclosed? Oh, no, no. I mean, on the – what we have in the record is the judge stating that confidential information was disclosed. It's not in the record what was actually disclosed. And I'm sorry if I over – but I think – what I think you're getting, though, is an important issue in this case, in that we don't know what happened there. I think there's a very good inference that there was a discussion on some level about what was actually disclosed, or about the alibi defense, rather. But – Why does that matter at all? Because your argument is that the lawyer testified, and he testified that he was not told by the companion or the defendant about the alibi. So why does it matter what specifically was told to the judge? And shouldn't – and if it did matter, shouldn't you have developed the record in the State court? I think that's – I think it matters – what we have here is a situation where, first, there would be – ultimately, there's a question of regarding whether there was, you know, whether Mr. McKibbins was denied the right to counsel or denied the right to effective assistance of counsel. We can't really judge. Well, he got a different lawyer. The lawyer recused himself. Yes. But then, I mean, he – when he went on and actually presented his testimony, which absolutely went against, you know, kind of really substantially undermined the alibi defense that Mr. McKibbins' present lawyer was trying to put on, he didn't state any objections on the record, as would have been his obligation. And moreover – Well, wait a minute. You don't make a claim of ineffective assistance of counsel by substantive counsel, do you? It is in the briefs. And what she failed to do, like – like former counsel, when she – Are you saying that you made a claim of ineffective assistance of counsel in the State proceeding? I – what occurred in this case is, you know, Mr. McKibbins – Can you answer that yes or no? I think yes. And let me explain why. Where? Give me the citation of the record, if you would, please. Can I try to explain and then I can give you the citation? I mean, well – I'd rather have the citation. Well, okay. There's a direct – in the direct appeal, and Mr. McKibbins has not been represented by counsel since direct appeal, the direct appeal brief raised a Sixth Amendment claim. That's on the face of the record. Then if you look at the cases that were cited by direct appeal counsel, which were then – you know, those same pleadings were then presented in the State district court, and then they were also presented to the Federal district court. Those cases deal with the – and let me – I can point you to those cases offhand. She cites to a series of cases in the direct appeal brief. United States v. Colacurico, Inree Turkeltaub, and People v. Rodriguez. And these are all cases that were also cited by the district court below. These are cases of – you know, that they actually raise claims related to the right to counsel in analogous circumstances. Who was the allegedly ineffective counsel in that Sixth Amendment argument?  And certainly it's – Do you think it's both or was it both? What's that? Do you think it's both? It was both, Your Honor. And what we have is a complete failure by the one lawyer to assert any sort of – you know, he voluntarily gave it up. I don't think – I mean, I haven't seen anything that would suggest that by breaching his duty of confidentiality and by making no effort to protect his former client's case, that this, you know, was in some way consistent with his obligations. And what was the basis of the objection that the testifying lawyer should have made? The basis of the objection should have been – it should have been that this is confidential information gained in the course of my investigation of my former client's case. It's also work product. And so there was no effort on his behalf to protect or at least – you know, he could have raised these objections and then at least there would have been a record of the objections. Why wouldn't it have – on that aspect of it, why wouldn't it have been harmless? It seems to me the evidence is just beyond overwhelming. You know, first of all, I think you – I mean, I'm not even – you know, the government never stops in terms of its throwing the kitchen sink into every case. But it seems to me that this was – there was no way that there was going to be an acquittal here without that testimony. I see I'm running out of time, but I really would like to address this issue in that first of all, I don't think it can be doubted that the persuasive value of having your former lawyer basically say, I don't believe my own client, I mean, that's going to be incredibly powerful to a jury, not only as to whether they buy the alibi defense, but also – I don't believe her. He just said this. She didn't say it to me. But let's assume he never testified. It seems to me what you have is the – is also the testimony of a companion who is a highly interested witness and that the evidence here was overwhelming. This seems to me to have been an harmless error without doubt. Well, I think – but he did testify. And I think the prejudicial impact would go beyond simply the alibi defense. Now, you know, the rest of the – I think there is evidence in the record that, you know, the ID in this case was poor, I think. There were real problems with, you know, the conduct by which he was arrested and the chase and the show-up ID where the real identification by the victim ultimately came when my client was sitting in the back of a police car in handcuffs and she said, that's him. Well, you know, I'm not sure that that's – He had the car and he had the clothes. What more do you really need? Were they wearing the sneakers, too, that the claim was just recently brought? I'd just like to make – and I know I'm over time right now – one final point. You know, I think there are a class of cases in which prejudice can be presumed. And I think – and one of those is where really – where it arises out of a conflict of interest where the, you know, counsel is basically acting as an agent of the prosecution. And I agree that on this record that we can't necessarily make that finding, but the bottom line is Mr. McKibbins has never had an opportunity to develop the record here. What we have is a situation. He was not allowed to be present in the original in-camera hearing, which we – I think we can all assume was about the alibi defense. But ultimately, there was no record developed about that. But what we do know is that somehow the State, the prosecution knew enough to, within a month of this hearing, file a notice of rebuttal alibi witness naming this counsel. And I think that that's an – and then in cross-examining the alibi witness, they ask very specific questions. I think there's a clear inference in the record that somehow, some way, Mr. McKibbins alleges it was because the prosecution was present during the in-camera. Kennedy. But the reason the questions were specific was because the judge wanted to be sure to make – to be sure that there were no – no information that was divulged that would come within the attorney-client privilege. I understand. But I think – but it's even the questions are very specific in terms of, you know, like the timing, like, you know, the number of meetings that may have occurred. This is before Mr. Koka gave his testimony. So somehow they had an inkling of how many meetings may have occurred. I think there is enough in the record to suggest that, you know, the prosecution got advance notice of Mr. Koka's proposed testimony. And I think that would be an even more troubling set of circumstances and one in which I think that the prejudice standard would be different. Even if it's troubling, I don't see – I still don't see why it's not harmless error in light of the other evidence. I mean, this is – whatever occasion the lawyer testifying, the basic fact is, is the evidence of guilt was overwhelming, and that there's no reason why we can't say that testimony is harmless. I would only – I, you know, I think – Other cases dealing with conflicts of interest in other contexts where it may not be possible to make a judgment one way or the other. But here, there's a discreet fact. He testified and rebutted the alibi defense, and yet the evidence of guilt is overwhelming. It's inconceivable that they would have believed an interested witness on the facts of this case. I'm not sure I'm going to have the time to change your mind on this. I would like to say that in the briefs, you know, I try to point out that the deficiencies in even the evidence that was presented beyond the alibi defense in terms of the ID, in terms – and, you know, I think a jury could have found on those facts that, you know, that there was enough question about the quality of her identification that, in the end, you know, I do think that there could – that it was harmful, because everything is going to be contextualized in terms of the idea that they find that the attorney, you know, thought his client was unbelievable. But with that, I'll – if there are no more further questions, I'll. Roberts. Thank you. We'll hear from the State. Please, the Court. Good morning. My name is Jamie Resch. I'm here on behalf of the Respondents. We've just spent 14 minutes talking about the merit of this case, and I think that's very interesting, but I'd like to spend a few minutes talking about AEDPA, because I believe its application to this case makes it an even more simple one for this Court to address. I received the counsel's 28-J letter just on Thursday evening discussing the application of Williams to this case, and it was my belief that this was clearly a case where epidephrin supplies just based on Harrington. Now we have the benefit of the Supreme Court's decision in Williams. Plainly, this is a case where the Nevada Supreme Court noted the Federal claims, rejected them, and in such a case, it's presumed that AEDPA applies. That matters because, in his reply, Mr. McKibbins clearly tells this Court that his claims are not based on anything found in the United States Constitution. Slow down a little bit, will you, counsel? Don't read. Oh, certainly. Well, I did want to read a few-word quote from his brief, if that may. On page 5 of his reply, he notes that his claims arise under well-established principles of professional conduct and enshrined in Nevada State law. While the problem with this is twofold, under 2254a, we can't grant relief unless his claims arise under the United States Constitution. And he's telling you that they don't. So just on the basis of that alone, that's one way that this Court could deny relief. Now, we could bridge that gap if only we had clearly established Federal authority, meaning a United States Supreme Court case that held that a violation of professional codes or the State statutes in this case was tantamount to a denial of due process. And make no mistake, those are the only two claims that we have before this Court. Our direct due process claims, there's nothing in the Federal petition about an ineffective assistance of counsel claim arising from the same set of facts. As the brief explains, there is no such authority. Essentially, we've gone through the United States Supreme Court cases, so did the district court, and distinguished those on various bases. In the other case, there's no such authority. There are. There's not a – the claim being made here isn't, in my view, ineffective assistance of counsel, because at the time of his testimony, he wasn't current counsel. But you can find in Supreme Court case law references to a lawyer's professional obligations in defining the standards for ineffective assistance of counsel. Is it such a large jump to say that the professional standards should be considered in evaluating what a past attorney's conduct is? Okay. Well, there's a few problems with that. Let me launch into it with counsel's 28J letter brought up the, you know, 30-year old decision in Nix v. Whiteside. That's a wonderful discussion of the application of ethical standards to, you know, whether or not those could arise in a constitutional context in the effective assistance of counsel. They held that it can't. And in the concurring opinions in that case, the Supreme Court goes on to say, we have no license to dictate that ethical standards have any constitutional mandate whatsoever. So that's all in that Supreme Court case from 30 years ago. There's nothing in the time since in which the Court has held counsel, you know, former counsel has no basis to testify against an attorney or cannot communicate confidential information to the court. So, no, I don't think those things exist in the law as it is. In the context of an ineffective assistance claim, which we don't have here, counsel — there at least would be the argument that if a State law or State statute was violated, that perhaps it would violate constitutional norms. The Supreme Court held in Nix that that doesn't arise in this case. Specifically, where there's a belief that there's going to be perjured testimony, counsel has the obligation to do something. In that case, he actually communicated that information to the court, and it was acceptable as far as the Supreme Court was concerned. We don't even know that that's what happened in this case. I don't think it's particularly brain surgery to see that counsel meets with a judge, withdraws, not long thereafter an alibi notice is filed. The prosecutor might be able to infer what's going on from that circumstance pretty readily. You don't know what happened at the confidential? I don't. I don't think anyone does. It's certainly not in the record, and it wasn't recorded. I would note this. On page 176 of the excerpts of record, the minutes from that hearing where counsel was able to withdraw reflect that, quote, "...Coco was given confidential information," end quote. So the whole concept that he actually relayed information to the court is belied by that minute from that record. Now, I understand the transcript may be read different ways, but in light of that minute order as well, I think we can even reach the conclusion that no, counsel did not communicate any confidential information to the court. And if he did, there was no constitutional mandate that prohibited him from doing so. As far as that issue goes. I understand. You represent the prosecution. The prosecution was present at a confidential hearing, and somehow nobody knows what was said. Well, I don't know that the we have information in the record that the State was present at that meeting. I believe that it shows that they weren't. I thought there was my recollection may be failing me, but I thought there was some evidence that suggests that the State was present. I'm sorry. Maybe the record is unclear, but either way, you would know whether you were present or not. Well, I wouldn't know. I mean, it wasn't our prosecution from our office, obviously. But the record I don't think is clear that the State was present at that meeting. And regardless, I do think the fact that they were able to eventually have Mr. Koch attest by, obviously they were able to at a minimum infer what was going on. But nonetheless, even if they were present, even if that confidential information was shared, there was no constitutional mandate that prohibited it. It may or may not have violated an ethical rule, but that isn't the kind of right that we've indicated in a habeas proceeding in Federal court. We also touched on this issue with the prior questioning, the question of prejudice arising from that issue. It wasn't much of a stretch to conclude that Mrs. McKibbins was lying. You could reach that result just from the testimony of all the other witnesses at the trial. Nonetheless, in addition, their prejudice argument is geared towards the sentencing. The fact that I know the sentencing judge made a comment about having Mrs. McKibbins give some false testimony, and that was a small component of the sentencing in this case. Mr. McKibbins was, notwithstanding that, a very bad man who had committed several serious felonies in the past, and that was the basis for his sentencing as a habitual criminal in this case. As far as the question of Mr. Koch testifying at the trial, again, this claim from the petition arises under the attorney-client privilege. I understand the interest Mr. McKibbins may have in expanding that to an ineffective assistance claim or even a work product type claim, but that's not what was raised in the petition. So all we have before us is attorney-client. And this is pretty simple. Mrs. McKibbins was not his client. So as far as testifying by anything she said, that wouldn't apply whatsoever. And, again, as to the question of prejudice of such a claim, the fact that she might have been lying about talking to the attorney about that claim does not necessarily mean that she was lying about the alibi. The entire issue is collateral to the fact of her testimony, which itself is rebutted by the significant testimony of several police officers and eyewitnesses who identified, again, Mr. McKibbins wearing the clothing from the time of the robbery who, you know, the police chased him and were able to apprehend him midstream and all the other testimony that was available at the trial. If there are no further questions, that's all I have. All right. Thank you. Thank you. You asked for a bottle. We took the time, but we'll give you a minute. Keep it to a minute. I just wanted a couple things. You know, Respondents have tried to frame this as the only thing that's in the petition is regarding the attorney-client privilege. That's not correct. You know, it's the same, you know, Nevada Supreme Court Rule 156 talking about confidentiality. This issue was, in fact, raised in the direct appeal, in the State post-conviction, in Federal court. They're all the same document, really. And that kind of bleeds into the AEDPA issue because what really happened is all that the Nevada Supreme Court did was address the attorney-client issue, which is the only objection that was raised by current counsel and, you know, omitting other valid objections on top of the fact that former counsel didn't interpose any objections at all. And, you know, I think in terms of that, on its face, that order doesn't even begin to address the issues that were raised on direct appeal. And it applies an abuse of discretion standard, which, you know, pure evidentiary law that has nothing to do with the constitutional issue. I see that I'm out of time again. And thank you. We thank both counsel for your helpful arguments. That case just argued is submitted.
judges: Korman, Clifton, Bea